*Eastern Dist.*
*April, 1836.*

FOUTELET ET AL.
*vs.*
MURRELL.

---

FOUTELET ET AL *vs.* MURRELL.

APPEAL FROM THE COURT OF THE SECOND JUDICIAL DISTRICT, THE JUDGE OF THE FOURTH PRESIDING.

A judgment obtained by the heirs of the deceased wife against the surviving husband, annulling the adjudication of the property of the succession to him, on the ground that it was the wife's exclusive property, and made through error, cannot affect purchasers and mortgagees of this property from the husband. It is as to them *res inter alios acta*.

EASTERN DIST.   Where the property of a succession is adjudicated to the surviving husband
*April*, 1836.   as *common property* through error, (it being the wife's exclusive property)
────────────   and this sale is ratified by the heirs, on having their respective shares of
FOUTELET ET AL.  their deceased mother's succession set off to them by the husband, any
*vs.*           contract of mortgage he may make, will bind this property in favor of
MURRELL.        third persons, who contract on the faith of these public acts.

This suit commenced by injunction to stay the sale of a slave, seized under execution in favor of Murrell, the plaintiffs in injunction also claiming the slave as their own.   They allege they are the children and forced heirs of Catharine Doublin, late wife of Joseph Foutelet; that at the decease of their said mother, in 1816, she owned considerable property, which she inherited from her father, consisting of a tract of land on the Lafourche, and several slaves, which their father and natural tutor, Joseph Foutelet, falsely and fraudulently had inventoried and adjudicated to himself as community property, when in fact it was the separate and paraphernal property of their mother.

That on coming of age, the youngest of the plaintiffs' had the adjudication of this property to their father annulled, as made in fraud, and the property ordered to be re-sold.

In the meantime, and while Joseph Foutelet was in the full enjoyment of this property, he conveyed half of his interest in it to Godefroy Foutelet and Emile Gourdault.   One of the slaves thus conveyed, had been mortgaged in May, 1832, to secure a debt, and was seized under an execution in favor of John D. Murrell, which issued on a judgment he had obtained against these persons, on this mortgaged debt, amounting to five hundred and fifty-three dollars and fifty-three cents, with interest from the 20th April, 1833, until paid.

The defendant pleaded the general issue, and averred that there was sufficient property to satisfy the plaintiffs' claim, if any they have, without interfering with the rights of the defendant.

1st. The plaintiffs claim this slave in right of their mother.
2d.  The adjudication to Foutelet, the father, being annulled by the Probate Court, the slaves of the succession, including

Pierre, the one under seizure, were no longer liable to Foutelet's creditors.

The evidence showed that the slave Pierre in question, with others, were inherited by the mother of the plaintiffs from her father, N. Doublin, and received by her during her marriage with Joseph Foutelet.

In 1817, all the property held by Foutelet and wife, after the death of the latter, including that inherited by her in her lifetime, and the slave Pierre, was inventoried and appraised as community property, and adjudicated to the former by the judge of probates for the parish of Ascension, at its estimative value in the inventory, amounting to eight thousand five hundred and ninety-four dollars.

Foutelet then set apart the amount of property which his deceased wife inherited, and as belonging exclusively to herself, and also her half of the community property, and her dotal effects, amounting to four thousand seven hundred and forty-two dollars, which sum he divided into seven shares among her seven children, (including the plaintiffs,) which gave to each six hundred and seventy-seven dollars and three-sevenths, and for which they subsequently signed receipts and acts of ratification. This transaction or partition, was made in February, 1817. Foutelet continued in the undisputed possession of all the property at its appraised value.

But Hypolite Foutelet, when he became of age, instituted a suit in the Probate Court, in 1834, to annul and set aside the adjudication of this property to his father, and on the 7th July, 1834, obtained a decree to that effect, ordering that it all be re-sold to effect a partition among the heirs.

In 1832, the slave Pierre was mortgaged to Murrell to secure the payment of the note upon which judgment was obtained, and the slave seized and sold.

Upon this evidence, the case under the pleadings was submitted to a jury, who returned a verdict for the defendant. Judgment was rendered confirming the verdict, and disolving the injunction with costs to be paid by the plaintiffs. They appealed.

HARVARD LAW SCHOOL LIBRARY

*Conrad,* for the plaintiffs.

1. That the slave *Pierre* was the paraphernal property of their mother, and was inherited by her children. The adjudication of the property comprising her succession was a mere nullity, and conveyed not even a shadow of title. It was a gross violation of duty on the part of the tutor, and whether originating in fraud or in error, it could avail him nothing.

2. The receipts given by the heirs, of the portions respectively due to them in virtue of this adjudication, were evidently the result of the error into which they had been led by the previous adjudication. Even had they contained an express relinquishment of all claim to the property, this agreement, founded in *error* in regard to their legal rights, an error superinduced too by the fraudulent concealment of their tutor, would not be binding on them. *Louisiana Code,* 1887–1890. 5 *Martin, N. S.* 260. 7 *Martin, N. S.* 12.

3. Even had the plaintiffs made an express and formal relinquishment of their rights to their mother's succession, with a full knowledge of all the facts and of their legal rights, this would have been an agreement without a consideration, (at least for the one half which their father assumed to belong to him, and for which he allowed them nothing,) and consequently a *donation.* Now none of the forms requisite to the validity of a donation *inter vivos* have been complied with, and this defect could only be cured by executing a new act in proper form. *Louisiana Code, art.* 2253.

4. Even the pretended act of ratification made by Hypolite Foutelet cannot have the effect contended for by defendants, for the following reasons: 1st. That the party making it did not intend thereby to ratify or confirm the adjudication to Joseph Foutelet; his purpose was a very different one, to disavow the act of his brother-in-law in purchasing one third of the property of the succession in his name. The other transaction is merely incidentally mentioned; to make a remuneration valid, it is necessary that the confirmative act should expressly mention the causes of nullity that exist,

and the intention to cure them. *Louisiana Code, art.* 2252.
2d. Because in fact there was nothing to ratify or confirm;
no contract existed against which an action of rescission
would lie. It was not the case of a contract void or voidable,
on account of incapacity of a party, or defect of form or
other vices; no contract had ever been made; it was simply
the case of a person, by his own act, attempting to usurp a
title to property, without a color of title, and with a full
knowledge of the title of another. Now an act of con-
firmation of such a title should contain in itself an absolute
and express conveyance of the property. See on this point
*Merlin's Repertoire verbo Ratifications, No.* 9, *case of La Venne
Crispin.*

4. This was not intended as a contract, and has not the
form of one : there is but one party to it. It was meant
simply as a protestation against an unauthorised act, and a
reservation of his rights. It was not even a *stipulation pour
autrui,* and as the party only appears to have had his own
interest in view in making it. Even had it been such, or
granting it to be such, he would have the right to revoke it
so long as it was not accepted by the third person. *Toullier,
liv.* 3, *ch.* 3, *sect.* 6, *No.* 341.

5. But all these acts were void on another account. They
were in fact settlements between a tutor and his ward, and
were not preceded by a rendition of account and delivery of
vouchers. *Louisiana Code, art.* 355. *Paillet Manual de
Droit,* 472. 1 *Delvincourt,* 129, 310.

*Nicholls,* for the defendants, contended:

1. That the verdict of the jury was correct on the merits
of the case, and fully sustained by the evidence.

2. In such cases as this, the verdict of the jury will not be
disturbed unless manifestly erroneous. In questions of fact,
it is the peculiar province of the jury to decide, *ad questiones
legis respondent judices ; ad questiones facti respondent juratores.*

3. The purchasers and creditors of Foutelet are not to be
affected by informalities in the proceedings, by which the
property held by him and his wife was adjudicated to him;

these informalities, whatever they were, are cured by the subsequent ratifications of the plaintiffs themselves.

*Bullard J.*, delivered the opinion of the court.

The appellee Murrell having recovered a judgment against Joseph and Godefroy Foutelet and Emile Gourdault, took out an execution or order of seizure and sale, which was levied on a slave named Pierre, which had been mortgaged for the security of his debt. Proceedings were stayed by injunction, at the suit of Paul Foutelet, Felonice Foutelet, wife of Emile Gourdault, and Rosalie Foutelet, wife of Pennier, on the grounds: first, that the slave Pierrre is their exclusive property, as heirs of their deceased mother, Catharine Doublin, and secondly, that by a decree of the Court of Probates, the adjudication of him to their father and tutor, together with other property, as belonging to the community, had been declared null and void, and that the property had been ordered to be sold to effect a partition. In answer to the petition for injunction, the defendant plead a general denial, and further avers, that there was sufficient property to satisfy the claim of the plaintiffs, if any they have, without interfering with his rights.

There was a verdict in favor of the defendant, and the injunction having been dissolved, the plaintiffs appealed.

That Pierre was the property of Catharine Doublin, the mother of the plaintiffs, and wife of Joseph Foutelet their father, and formed a part of her paraphernal estate, is abundantly shown, and the question whether they have been divested of title, forms the principal difficulty in the case. It appears that their father, after the death of their mother, caused the whole property to be inventoried, as belonging to the community, and to be adjudicated to him by the Court of Probates, at the price of appraisement. He afterwards sold one undivided half of the land and slaves, and among the rest Pierre to Godefroy Foutelet, his son, and Emile Gourdault, his son-in-law, and to one of the plaintiffs, Paul alias Hypolite Foutelet, then a minor, whom his brothers assumed to represent, but who, after arriving at

the age of majority, disclaimed the purchase, preferring to
claim his share in his mother's estate, as established by the
settlement in the Probate Court, in 1817.

It is contended, on the part of the defendant, that however
erroneous the proceedings may have been, on the part of the
father, in causing to be adjudicated to himself the property
belonging exclusively to the heirs of his wife, yet the
plaintiffs have ratified those acts, and received the price of
that adjudication, and are thereby precluded. 8 *Martin*,
*N. S.* 5, 18. 6 *Louisiana Reports*, 601. The record fur-
nishes us a copy of an authentic act, dated September, 26,
1832, by which it appears that Madame Pennier acknow-
ledges that her father has rendered her an account of the
estate of her mother, and that she is satisfied by the vouchers
in support of the account, that the portion coming to her
amounts to six hundred and seventy-seven dollars and three-
sevenths, which sum she acknowledges to have received from
her father, and she releases the mortgage in her favor, on his
property resulting from his tutorship. Another document in
the record shows, that Madame Gourdault, another of the
plaintiffs, about the same period, gave a similar receipt and
discharge to her father. The other plaintiff, Paul alias Hypo-
lite, at the same time that he repudiates the purchase made
for him, declares that he intends to insist on his rights, as one
of the heirs of Catharine Doublin, such as they are established
in the account of the succession rendered on the 10th Febru-
ary, 1817, by his father, before the Court of Probates, his
rights amounting to six hundred and seventy-seven dollars
and three-sevenths. He declares that he approves that
account, and the adjudication of the property, on the same
day, to his father, acknowledging that nothing more is
coming to him than the above mentioned sum, for which,
and the accruing interest, he has a mortgage on all the
property of his father, but which he restrains in its operation
to the land and slaves in question.

The only difference between the three is, that the two
first acknowledge to have received their share of their
mother's estate, and the last, (Paul,) although he has not

38

EASTERN DIST.
April, 1836.

FOUTELET ET AL.
vs.
MURRELL.

A judgment
obtained by the
heirs of the de-
ceased wife,
against the sur-
viving husband,
annulling the
adjudication of
the property of
the succession to
him, on the
ground that it
was the wife's
exclusive pro-
perty, and made
through error,
cannot affect
purchasers and
mortgagees of
this property
from the hus-
band. It is as to
them *res inter
alios acta.*

Where the
property of a
succession is ad-
judicated to the
surviving hus-
band as *common
property*, through
error, (it being
the wife's exclu-
sive property,)
and this sale is
ratified by the
heirs, on having
their respective
shares of their
deceased mo-
ther's succession
set off to them
by the husband,
any contract of
mortgage he
may make, will
bind this proper-
ty in favor of
third persons,
who contract on
the faith of these
public acts.

received his share expressly, ratifies the adjudication to his father, and contents himself with the amount shown to be due him on the basis of that settlement, secured by a legal mortgage on the land, and among others of the slave Pierre.

But it is urged by the counsel for the appellants, that these receipts and acknowledgments were made in error, as well as the original adjudication, and ought not to prejudice them; and that in fact a judgment has been rendered in the Probate Court, annulling the whole proceedings and ordering a sale of all the property at public auction.

Whether these instruments, if produced on the trial of that case, would have concluded the present plaintiffs, we are not now called on to inquire; but it appears to us clear, that the rights of the defendant in this case, cannot be affected by that judgment, and we must look at those instruments as if no such judgment had been rendered. It is as to him, *res inter alios acta.* Whatever might be the opinion of this court, as to the validity, as between the original parties, of the adjudication founded in error, and as to the subsequent ratification, admitting that they were equally made in error, it must not be overlooked that Murrell acquired his rights under the faith of these acts, which were all of public record, and nothing shows that he was conusant of the alleged errors. We are, therefore, of opinion, that in relation to the defendant Murrell, the plaintiffs are precluded, reserving, however, to Paul Foutelet his legal mortgage on the slave in question, in common with the other property of Joseph Foutelet. The existence of that prior mortgage, formed none of the grounds on which the injunction was obtained, and if it had, we have often ruled, that one hypothecary creditor has no right to arrest the proceedings instituted by another, against their common debtor, simply on the ground of priority.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.