(45 South. 540.)

No. 16,711.

STATE v. AYLES.

(Jan. 9, 1908. Rehearing Denied Feb. 3, 1908.)

1. HOMICIDE—APPEAL—REVIEW.

Defendant, indicted for the murder of his wife, was found guilty and sentenced to death. He has appealed. His defense is that he was insane when the act was committed. He complains that the trial court improperly rejected evidence sought to be introduced to sustain his plea. He urges additionally various matters that he claimed were prejudicial to him, which arose in the course of the trial below.

2. CRIMINAL LAW—NOLLE PROSEQUI—JURY—SUMMONING, ATTENDANCE, AND DISCHARGE—STATUTORY PROVISIONS.

Defendant was tried for murder under a second indictment which was found against him. The district attorney had the legal right to enter a nolle prosequi upon the first indictment, if he believed it could not stand the test of judicial scrutiny by the Supreme Court, although its validity had been recognized by the trial court. The accused suffered no injury thereby, as he had not been as yet placed in jeopardy.

The district court had the right, under section 10, Act No. 135, p. 221, of 1898, to order the jury which had been drawn for the May term to reassemble for duty for the June term under the circumstances this was done.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 688–697; vol. 31, Jury, § 391.]

3. SAME—APPEAL—HARMLESS ERROR — SELECTION OF JURY.

The defendant has no legal ground for complaint on the ground that the court refused to allow a certain question to be propounded to jurors on their voir dire, when he was not called on to exhaust his peremptory challenges in consequence thereof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, §§ 3115–3117.]

4. SAME — TRIAL — RECEPTION OF EVIDENCE—HYPOTHETICAL QUESTIONS.

The trial court has much discretion in the matter of permitting hypothetical questions to be propounded to an expert witness for the purpose of eliciting from him his opinion as to the sanity of the accused at the time when the homicide with which he was charged was committed; this discretion covering both the form and the substances of the question.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, § 1073.]

5. SAME—ORDER OF EVIDENCE.

When the hypothetical question which counsel for the defense proposes to submit to the expert as a premise on which to express an opinion as to the sanity of the accused includes matters as to which there has been as yet no testimony before the jury, and as to which he simply declares he expects to produce testimony, he should at least make the offer conditioned upon an obligation upon his part to subsequently offer such testimony. When the trial court has refused to allow the question to be asked on the ground that the premise on which the question is based is as to matters not supported by testimony as yet before the jury, the accused, complaining of the ruling, should be able to show by the record that such testimony was in fact subsequently placed before the jury.

6. SAME—RECORD IN ANOTHER CASE.

Where the accused, charged with the murder of his wife, depends on the claim that he was insane when the homicide was committed, he cannot offer in evidence the record in another court of a charge against his wife for the murder of another woman, so as to bring before the jury the particulars of that homicide, to connect himself with it and make the connection furnish the probable cause of subsequent insanity in him. The testimony sought to be introduced was that adduced on the preliminary investigation of the charge against his wife, which was never used in the trial of his wife. This testimony was no part of the record sought to be introduced.

(Syllabus by the Court.)

Appeal from Thirteenth Judicial District Court, Parish of Rapides; Wilbur Fisk Blackman, Judge.

Edward Ayles was convicted of murder, and he appeals. Affirmed.

Henry L. Daigre, John C. Ryan, and Frank McGloin, for appellant. Walter Guion, Atty. Gen., and John Ransdell Hunter, Dist. Atty. (Lewis Guion, of counsel), for the State.

NICHOLLS, J. Defendant was convicted and sentenced to death on the charge of murdering Mary J. Ayles. The defendant pleaded "not guilty." He relies upon a claim that he was insane when he committed the homicide. His counsel calls the court's attention specially to two bills of exceptions found in the record.

The first of these two bills appears as bill of exceptions No. 4, which recites that on the trial of the case the accused by his counsel offered in evidence the certified copy of the record in the criminal suit, No. 35,587 of the docket of the criminal district court of the city of New Orleans, entitled "State of Louisiana v. Mary J. Ayles," to show the fact that the shooting of this woman, Alice Wells, while lying in the bed with Edward Ayles, so shocked him as to addle and derange his mind; that he is now, and has been ever since the occurrence, a monomaniac; that this homicide, while lying in bed with this woman, Alice Wells, deranged him to such an extent as to make a crazy person of him, and affected his mind to such a degree that he is now, and was at the time he killed his wife, a paranoid, so insane that he is not responsible for his act and has been growing worse every day; that this record is offered to prove the above facts, and not for the purpose of entering into the character of the deceased, Mary J. Ayles.

Bill of exceptions No. 5 recites that:

"While this case was being tried before a jury regularly sworn and accepted by the state and by the accused, and in the presence of the jury, and after the state had closed its case in chief, and after the defense had examined the better part of its witnesses, and had established some of the facts contained in the hypothetical question, and expecting to establish the others (which hypothetical question is annexed hereto and made part hereof, and was framed by the accused and to be submitted to Drs. J. A. White and Biscoe, alienists appointed by the court to examine into the mental condition of the accused, which appointment is hereto annexed and made part of this bill), the court in presence of the jury said that this is not a hypothetical question, and did not contain facts, and peremptorily refused to permit the aforesaid Drs. J. A. White and Biscoe to answer the same, denying the right of the accused to propound or submit said hypothetical questions to the said alienists, thereby shutting every avenue of the defense on the question of insanity out of the case, and causing the jury to find an unqualified verdict of murder, which would have been otherwise, had the questions been answered.

"The court refused to allow the question to be answered for the following reasons: The question was not a hypothetical one, but purports to give a statement of facts which were not in evidence so far as the killing of a woman in New Orleans was concerned, nor the acts connected therewith. So far as the court or jury knows, no such facts were in existence.

"A part of the statement rehearsed the proof that had been introduced and which was heard by the expert alienist. There were only two witnesses who testified that the accused acted queer at times. One of them had been sentenced to the penitentiary. While there were six or seven witnesses—some of the state's witnesses—who testified that they had known the accused for two years, and he was of sound mind and was a successful business man. And the alienists, all after examination at different times, testified that the accused was of sound mind and knew well what he was doing; and Dr. Hayes, in charge of the asylum at Pineville, after investigation of the accused and his actions, testified that he was of sound mind and the accused was feigning insanity.

"The hypothetical question, so called, was, in the opinion of the court, an effort to set before the jury a statement of purported facts to influence the minds of the jury. The accused had a fair and impartial trial by a very intelligent jury, and the exclusion of the pretended hypothetical question did not operate to the injury of the accused.

"In ruling on the hypothetical question, so called, I stated, as a reason for so doing, it was not one; but it was a statement made out by the attorney, all of which, so far as the crime committed by Mary J. Ayles was concerned, had been ruled out by the court, and there was no comment whatever by the court on the trial. I was extremely liberal in admitting evidence in favor of the accused, wishing to give him a fair and impartial trial, and to prevent, if possible, the reversal of the verdict of the jury on any technical exception."

The question which is referred to in the bill as the hypothetical question, and which was annexed to it, was as follows:

"If, as bearing on the question of the sanity or insanity of the accused, Edward Ayles, the following facts were shown by competent proof in the record and before the court and the jury who are now trying him on an indictment for murder, it being charged that he murdered his wife, Mary J. Ayles, on the night of the 31st of December, 1906, while they were alone in the rear of the store where he had been for some months conducting a general secondhand clothing and furniture store:

"That on the 1st day of June, 1904, while they were living together in the city of New Orleans, the said Mary J. Ayles shot and killed a woman by the name of Alice Wells, whom she surprised in bed with the said Edward Ayles, and while she was lying beside him in the bed; that the shock resulting from the tragedy thereafter caused him to resort to the use of cocaine, smoking of opium, and drinking whisky in order to induce forgetfulness of the horror of the frightful scene through which he had passed; that thereafter they moved, and lived for a year or more in the Indian Territory, where it was not possible to prove his acts and conduct, but that about a year or more before the date of the homicide of which he is accused they moved to Alexandria, and he opened the business which is described above, where he kept in different parts of the premises ready at his hand, and especially at the head of his bed, while he slept, a Martin and Winchester rifle, both repeating rifles, and a double-barreled shotgun and four repeating pistols of the latest improved makes and pattern, all of said arms loaded to their fullest capacity, with fixed ammunition; that since the death of said Alice Wells as above described, when she was shot and killed while in bed with him by his side, it is shown that all of his actions have been queer and not those of a normal, sane person, in the following particulars of conduct and beliefs: That he was pursued and menaced by enemies who were seeking to kill him or do him great bodily harm, and that the purpose of surrounding himself at all times with the above-named array of deadly weapons was to guard and protect himself from these supposed, and so far as known imaginary, enemies; that on one occasion shortly before the homicide he mounted a horse barebacked, with four pistols buckled around him, and went around the streets of Alexandria in this fashion, collecting bills with a horsewhip, and did actually beat one person who owed him 15 cents for not paying him, for all of which he was arrested; that in the afternoon of the day of the homicide they had been buggy-riding together; that they had, just before the homicide, been shooting firecrackers on the sidewalk; that they had been living happily together; that no motive has been shown for him to wish to kill her, or harm her in any way; that after they returned from the sidewalk almost immediately several shots were fired in the rear of the store; that when persons came the prisoner exclaimed several times, 'Oh! I have killed my poor dear wife accidentally;' that he stated almost immediately to other persons that the pistols he had were to be used by both of them at 12 o'clock to celebrate the advent of the New Year; that while he was handling them they went off of their own accord in some way for which he could not account, and his wife had been shot in that manner.

"These facts being shown satisfactorily, is it your opinion that the prisoner, at the time of the homicide, was a person of unsound mind? Is it your opinion that he was, at the time of the homicide, sane or insane?"

The other bills of exceptions mentioned are as follows:

### Bill of Exceptions No. 1.

This bill recites that on the motion to quash this second indictment, found by a grand jury while a first indictment was pending for the same crime of murder, the accused excepted to the ruling of the court overruling the motion to quash on the ground that the court had held, on the motion which had been made by him to quash the first indictment found against him, that that indictment was valid and must stand; that accused had pleaded to this first indictment, and his case was fixed for trial; that he had acquired rights under the first indictment which were beneficial to him, which neither a subsequent grand jury nor the district attorney could impair. The court overruled this motion to quash the second indictment for the following reasons:

"The district attorney, having some doubts as to the legality of the first indictment, had the grand jury at this term to find a new bill, and entered a nolle prosequi on the old one, which the law authorized him to do, and there were no grounds for quashing the present bill of indictment."

### Bill of Exceptions No. 2.

It appears from this bill that, on the cause against defendant being called for trial, it was continued by order of the judge for the May term, 1907, and the court proposed reassigning it for a particular day in the future, to which action accused excepted—

"because on that day there was no regular jury term of the court, and that that was an ordinary civil term of the court. The court stated that there was a jury drawn for May, 1907, jury term of court, but the time was past and the said petit jury was functus officio; that their time of service has elapsed according to law; that the case was assigned for trial March 5, 1907, refixed by the court for March 18th, again reassigned for May 13th, and again for May 27th, and then refixed for June, and finally continued before that time by the judge on account of smallpox in the jail."

The recital is made in the bill by the accused:

"That he has asked for no delays until now; that he is still in the four walls of the parish prison, and had been denied bail by the judge."

The objections to this particular assignment were because the judge, without warrant in law to hold the petit jury, which was drawn to serve the second week of the May term of this court, which is a civil term, and no jury was drawn to serve in June; that the judge cannot substitute the jury drawn for the second week of May term, so as to use them at the June term of his court; he cannot continue their service for any other than the May term of his court; that this cause is now being assigned for another month, in which, nor for which, there was any jury drawn; that such irregularities in the proceedings of the court are greatly prejudicial to the rights of the accused, as they deprive him of the right of being tried by an impartial jury of the parish, drawn in accordance with the jury laws of the state, and not a jury whose term has expired and now being held over by the order of the judge to serve at a different term of the court from that for which they were drawn and legally intended to serve; that such procedure is irregular, contrary to law, and detrimental to the rights of the accused, and out of the ordinary rules of criminal practice of the state of Louisiana. With reference to these objections the court said:

"The petit jury were drawn regularly to serve on the 13th of May, 1907; but as the smallpox in the jail prevented the trial of criminal cases, so the jury did not serve, I ordered them to report for service on the 17th of June, when the criminal cases would be tried. This authority is conferred by section 10, p. 977, Rev. St."

### Bill of Exceptions No. 3.

Bill No. 3 was reserved to the refusal by the court to allow accused to propound a question to the jurors on their voir dire as to whether they had read the New Orleans papers giving an account when Mary J. Ayles killed a woman lying in the bed with accused, on or about June, 1904.

The question was objected to as being irrelevant and immaterial, and assuming a state of facts not proven or relevant to be proven in the trial of the cause.

The court refused to allow the question, as it was not material to the issue, which was the competency of the jurors to sit in the present case, which was in nowise connected with the Mary J. Ayles case, which is said to have occurred four years ago; that it was an effort to get evidence before the jury to prejudice the minds of the jury against the deceased, whose character could not be inquired into as a justification of accused. Besides, the jurors were accepted by defendant's counsel and all answered, but three, that they had not seen the articles, and the three jurors did not answer at all, and defendant's peremptory challenges were not exhausted.

The first complaint of the defendant which we will refer to is that embodied in bill of exceptions No. 1.

We find no legal ground for complaint in the grand jury finding a second indictment for murder under the circumstances recited.

The district attorney was not compelled to go to trial on an indictment which he believed could not stand the test of the judicial scrutiny and decision by the Supreme Court of the state. Having such belief, he was authorized to enter a nolle prosequi upon the first indictment. Marr's Criminal Jurisprudence, p. 804; State v. Hornsby, 8 Rob. 583, 41 Am. Dec. 314; State ex rel. Dist. Attorney v. Judge, 48

La. Ann. 109, 18 South. 943; State ex rel. Bier, 48 La. Ann. 140, 18 South. 942; State v. Frazier, 52 La. Ann. 1305, 27 South. 799; State v. Paterno, 43 La. Ann. 514, 9 South. 442; State v. Pierre, 38 La. Ann. 91; State v. Hunter, 14 La. Ann. 71; State v. Langton, 6 La. Ann. 284; Rev. St. § 990.

The accused suffered no injury. He was never placed in jeopardy. State v. Paterno, 43 La. Ann. 514, 9 South. 442; State v. Michel, 111 La. 434, 35 South. 629; State v. Daniel, 31 La. Ann. 91.

### Bill of Exceptions No. 2.

The course pursued by the court, and which is complained of, was authorized to be followed by section 10 of Act No. 135, p. 221, of 1898.

### Bill of Exceptions No. 3.

Accused presents no ground for reversal of the verdict and judgment by reason of the rulings of the district court recited in this bill. It appears that the accused was not forced to exhaust his peremptory challenges by reason thereof. State v. Aarons, 43 La. Ann. 406, 9 South. 114; State v. Cancienne, 50 La. Ann. 1324, 24 South. 321.

### Bill of Exceptions No. 4.

The objections urged by the state to the introduction in evidence of the record sought to be introduced by the defense, and which were sustained by the court, were:

(1) The record was not complete.

(2) The evidence was taken on a preliminary examination, and does not show the minutes of the court on the trial, nor verdict of the jury.

(3) That the state is afforded no opportunity to cross-examine the witnesses.

(4) The matter should be excluded as res inter alios acta.

(5) The matter is irrelevant and immaterial on the trial of this cause.

Counsel of defendant urge in their brief that, assuming there may be legal objections to the introduction in evidence of the record, this court must confine itself to the specific objections presented below and passed on by the trial court, and refer to Hennen's Digest, vol. 1, p. 492, § 1; Pilie v. Kenner, 2 Rob. 98; Bogan v. Finlay, 19 La. Ann. 94; State v. Green, 111 La. 90, 91, 35 South. 396.

This proposition is too broadly stated. If an objection made to the introduction of evidence on specific grounds be overruled, the party objecting cannot on appeal urge grounds for reversing the trial court's ruling not set out in the lower court; but where the objection taken has been sustained in the lower court, and the case is appealed, the Supreme Court will not reverse the ruling, if it be correct, though the rejection of the evidence was based on wrong reasons. Clarke v. Jones, 1 Rob. 80. That principle has been repeatedly recognized and acted upon in the matter of judgments.

The ruling of the district court as to its correctness is a matter at large for the consideration of this court.

The excluded evidence having been annexed to and made part of the bill of exceptions, we have directed our attention to what is designated therein as the record in the case of State of Louisiana v. Mary J. Ayles. It contains copy of an information filed by the district attorney charging Mary J. Ayles (the woman for whose murder the defendant herein was indicted) with manslaughter for having killed one Alice Wells and a copy of the proceedings taken in the First city criminal court on the preliminary examination of Mary J. Ayles and Edward Ayles, made upon an affidavit of a police officer charging them with the murder of Alice Wells. This preliminary examination ended with an order discharging Edward Ayles and an order transferring the subject-matter as against Mary J. Ayles to the criminal district court for examination. The information contained no recital of the facts connect-

ed with the homicide, and there is nothing in the transcript to show that the testimony taken on that examination was ever used in the criminal district court in the case against Mary J. Ayles. The transcript contains nothing more than what has just been stated. It does not appear whether the accused in that case was brought to trial, and, if so, what the result of the trial was.

It is a general rule that an offer of the record in another suit in evidence is not an offer of the testimony taken in that case. That testimony is not per se a part of the record. Baptiste v. Soulie, 13 La. 270; Florance v. Bachemin, 3 La. Ann. 174; Erwin v. Bank of Kentucky, 5 La. Ann. 6; Mestier v. Opelousas Railroad, 16 La. Ann. 356. The testimony found in this transcript, as we have stated, was not testimony taken in the criminal district court, but that taken in the First city criminal court. That testimony could only be used in the criminal district court under exceptional circumstances alleged and proved. Still less could it be used in this case, as it was attempted to be used on the part of the defense. The record offered was evidently incomplete. The defense sought to submit to the jury in this case, as direct substantive evidence to establish the particulars of the killing of Alice Wells, the testimony on the preliminary examination taken in the First city criminal court. This the accused was not authorized to do. We think there was no error in excluding the record as offered.

### Bill of Exceptions No. 5.

The ruling of the court referred to in this bill was in respect to an alleged hypothetical question which counsel of the accused desired to propound to witness on the stand as an expert.

We think it is generally recognized that the trial court is vested with much discretion, not only in controlling the form of such questions, but also in determining the question of their admissibility. In the present instance it appears, not only from the judge's statement as to the situation of the case when the question was sought to be asked, but from the recitals made by the counsel of the accused themselves in the bill of exceptions which they framed, that a large part of the recitals of fact contained in the question were as to matters which confessedly as yet had not been placed before the jury, and as to matters which counsel did not declare they could or would thereafter place before it—matters which they simply declared they expected to establish. Ordinarily parties are not controlled by the judge as to the order in which they choose to introduce their evidence; but in a matter of this kind we think the party propounding the questions should at least do so under declared obligation to thereafter on his part introduce testimony tending to prove them. Counsel question the right of the trial judge in his per curiam to the bill to make any statement as to the situation of the case in respect to the testimony already taken therein; but it has been the constant practice in our courts for him to do so, in order to explain and support his action when excepted to. Assuming that counsel for the defense has the right to embody in the hypothetical question matters concerning which there had as yet been no testimony before the jury, but which might or might not as a matter of fact be testified to thereafter, it would be incumbent upon defendant's counsel, seeking to have us set aside the verdict on the ground of an erroneous exercise of the court's discretion in refusing to allow the question to be answered, to make a showing to this court that testimony which they declared they expected to introduce had in fact been introduced. Were it not obligatory on counsel to introduce such testimony, they would be at liberty to select themselves, as the basis upon which the expert should express his opinion, premises

which had no relevancy or relation to the case before the court. We would not be warranted in setting aside the verdict in this case, in the condition of matters declared by this record.

We find no ground for setting aside the verdict, and the judgment appealed from is hereby affirmed.