HIGGINS, Justice.
 

 Manuel Bell, Jr., instituted a jactitation action against the Canal Bank & Trust Company, in Liquidation, which converted the suit into a petitory action by claiming the ownership of the property involved. The district judge held that the Bank had proved a superior title to the land and recognized and maintained its ownership. Bell appealed and the Court of Appeal of the First Circuit affirmed the judgment. 184 So. 382/ ' A lengthy and vigorous application for a rehearing was filed and the Court granted it. The case was reargued, additional briefs were submitted and the original judgment of the Court of Appeal was reinstated and made final. 187 So. 295.
 

 The issue presented is whether or not a third party dealing with the title and ownership of immovable property on the faith of the public records is protected against latent equities or rights dehors the public records.
 

 The controversy grew out of the following factual situation:
 

 The plaintiff and the defendant both claim title through Manuel Bell, Sr. The plaintiff, Manuel Bell, Jr., claims title by inheritance from his father, Manuel Bell, Sr., and by purchase from other coheirs, who are children and grandchildren of Manuel Bell, Sr. The defendant, the Canal Bank & Trust Company, in Liquidation, asserts title through a tax sale to Joseph Staring. The property involved was assessed for the year 1912, by the assessor of East Baton Rouge Parish, in the name of Pleasant Bell and the Succession of Manuel Bell, the record owners of the property. The assessed taxes were not paid and the property was duly and legally sold at public sale by the Sheriff and Ex-officio Tax Collector of the Parish on June 17, 1913, to Joseph Staring for the unpaid taxes due for the year 1912. The sale was properly recorded. Beginning with the year 1913 up to the present time the property has been continuously assessed in the name of Joseph Staring and his successors in title, and all of the taxes have been paid on it in the name- of Joseph Staring and his successors in title.
 

 In the year 1920, Joseph Staring died, and Dr. Houston L. Staring was recognized as his sole and only heir and, as such, placed in possession of all of the property left by the deceased, including the land in controversy. The ex parte judgment was duly registered in the Conveyance Office.
 

 On November 8, 1926, Dr. Houston L. Staring, as the record owner of the property, brought suit against “Manuel Bell, if alive, or if dead, his heirs, through Robert G. Beale, curator ad hoc,” under the provisions of Article 233 of the Constitution of 1898, Section 11 of Article 10 of the Constitution of 1921, and Act 101 of the Legislature of Louisiana of 1898, for the purpose of confirming and quieting the tax title acquired by his father, Joseph Star
 
 *147
 
 ing. The curator ad hoc joined issue by filing an answer and judgment was rendered on December 22, 1926, in favor of the plaintiff and against “Pleasant Bell and Manuel Bell, and their heirs, confirming and quieting the title to the plaintiff to the hereinafter described real estate, and recognizing plaintiff as the sole and only owner thereof.” On the same day, the judgment was registered in the Conveyance records of the Parish of East Baton Rouge.
 

 On April 16, 1927, Dr. Houston L. Staring executed an act of conventional mortgage on the property together with other land in favor of the Prudential Insurance Company of America, to secure a loan of $1500, as evidenced by a promissory note of even date. This note was acquired by the Canal Bank in due course of business and not being paid at its maturity, proceedings were brought via executiva on the note and the mortgage by the Bank on April 20, 1932.
 

 Dr. Houston L. Staring died in 1928, testate, his succession was opened and his widow, Mrs. Margaret L. Staring, and George H. DeRussy were appointed as testamentary executors, against whom the executory proceedings were prosecuted. The property was duly seized by the Sheriff in the foreclosure proceedings brought by the Bank and properly advertised to be sold on May 2, 1936.
 

 On April 29, 1936, Manuel Bell, Jr., and several. other alleged co-owners, who subsequently transferred their alleged interest in the property to Manuel Bell, Jr., intervened in the foreclosure proceedings, claimed ownership of the land and sought a preliminary injunction to prohibit the sale thereof. They were granted a restraining order and the sale, as advertised for May 2, 1936, was prevented. The intervenors alleged in their petition of intervention that, at the time Dr. Houston L. Staring granted the mortgage to the Prudential Insurance Company of America, he knew that he was not the owner of the forty arpent tract of land “and particularly the ten (10) acres above described, and belonging to your petitioners, and knew that he had no right to give a mortgage upon said property, and that the said mortgage was fraudulently and illegally executed by the said Houston L. Staring and constitutes a fraud upon your petitioners.” They prayed for a permanent injunction against the Bank and for a judgment in their favor and against the Bank and the Sheriff “cancelling and annulling the mortgage hereinabove described in this petition, insofar as it affects any portion of your petitioners’ property aforesaid.”
 

 The Bank filed exceptions of no right and no cause of action to the petition of intervention on May 19, 1936, and after they were argued and submitted on briefs, the trial court rendered judgment sustaining the exceptions and dismissing the petition of intervention and dissolving the preliminary injunction. The judgment was signed on March 1, 1937, and no appeal has been taken therefrom and it is therefore final.
 

 After the dismissal of the petition of intervention, the Bank had the property readvertised by the Sheriff, under the
 
 *149
 
 original writ, and it purchased the property at the Sheriff’s sale, which was held on April 24, 1937. This sale was also duly registered.
 

 On the trial of the present case on the merits, Manuel Bell introduced evidence showing that the heirs of Manuel Bell, Sr., were recognized and placed in possession of his estate, and particularly a ten acre tract of land which was a part of the property in question, under an ex parte judgment in February 1929.
 

 Documentary proof of the acquisition by Manuel Bell, Jr., of the interest of his coheirs to the property, executed in June 1936, was offered. He also filed in evidence the record in a suit instituted by Manuel Bell, Jr., and his alleged coheirs against Mrs. Margaret L. Staring et al., in March 1929, to which the Canal Bank was not a party, and which suit (although an answer was filed and issue joined) was dismissed by the court for failure to prosecute for a period of five years. This judgment was affirmed by the Court of Appeal of the First Circuit on- November 7, 1936. 170 So. 502. He also offered in evidence the purported tax sale, whereby the property was acquired by Joseph Staring and the record of the suit of Manuel Bell, Jr. v. Mrs. Margaret L. Staring et al., No. 11,289, which was instituted in June 1936. The Canal Bank was not made a party to this suit, although, at the time it was filed, the property involved here was under seizure by the Sheriff and would have been sold on May 2, 1936, had the sale not been prevented by the intervention of Manuel Bell, Jr., and others in the foreclosure proceedings by obtaining a restraining order or preliminary injunction.
 

 The purpose of the action in proceedings No. 11,289 was to have set aside and cancelled the tax sale to Joseph Staring in 1913 and the judgment in favor of Dr. Houston L. Staring dated December 22, 1926, confirming and quieting the tax title and recognizing him as the sole and only owner of the property, on the ground of fraud alleged to have been committed by Joseph Staring and Dr. Houston L. Staring upon the plaintiffs. In this connection, it appears that the forty arpents of land were owned in indivisión by two brothers, Pleasant Bell and Manuel Bell, Sr., in the proportion of an undivided three-fourths interest to the former and one-fourth interest to the latter. In 1910 Pleasant Bell mortgaged his three-fourths undivided interest to Joseph Staring but Manuel Bell, Sr., did not mortgage any part of his one-fourth interest. It was the custom for Pleasant Bell and Manuel Bell, Sr., to contribute their respective portions of the taxes each year and either Pleasant Bell or Manuel Bell, Jr., would go to the Sheriff’s office and pay the taxes on the whole of the property, receiving the Sheriff’s receipts therefor. After Pleasant Bell mortgaged his interest in the land to Staring, he ceased to contribute his portion of the taxes and Staring, to protect his mortgage, thereafter paid the proportion of the taxes due by Pleasant Bell. The first year that Pleasant Bell ceased to contribute his part of the taxes, Manuel Bell, Jr., went to the Sheriff’s office and tendered one-fourth of the amount of the taxes due by Manuel Bell, Sr., which was
 
 *151
 
 refused by the Sheriff on the ground that he could not accept a portion of the taxes but was required to have the full amount thereof paid. Manuel Bell, Jr., then went to Joseph Staring and informed him of the situation and an arrangement was entered into between them, whereby, from that time on, Manuel Bell, Jr., each year delivered to Joseph Staring the amount of one-fourth of the taxes due by Manuel Bell, Sr., or his heirs, and Joseph Staring agreed to pay the sheriff the full amount of the taxes, which included the three-fourths due by Pleasant Bell. For eighteen years Joseph Staring and then, after his death, his son, Dr. Houston L. Staring, continued to accept from Manuel Bell, Jr., one-fourth of the amount of the taxes due by Manuel Bell, Sr., and his heirs, and to use the money thus received to pay the taxes on the property. Manuel Bell, Sr., with his family and, after his death, his heirs continued in possession of the property, which they have held and occupied for sixty-five years.
 

 In 1912, two years after the arrangement had been entered into with Joseph Staring to pay the taxes on the whole of the property, one-fourth of the amount being contributed by Manuel Bell, Jr., for which he was given a receipt for that year, as well as the subsequent fifteen similar yearly payments, and, without apprising Manuel Bell or any of his coheirs of his intention' to do so, Joseph Staring deliberately neglected to pay any of the taxes for the year 1912, as a result of which the whole of the forty arpents were adjudicated at tax sale and bought in by Joseph Staring.
 

 No direct notice of the sale was ever given to Manuel Bell, Sr., or any of his heirs other than the advertisement of the property for taxes and the registration of the tax sale, and they remained ignorant of what had transpired until after the death of Dr. Houston L. Staring, in 1928, when his widow gave Manuel Bell; Jr., the first intimation that he was not a co-owner by demanding that he pay her rent for the property or move. He immediately consulted an attorney and he and the other thirteen heirs of Manuel Bell, Sr., in March, 1929, instituted the slander of title action, which was eventually dismissed for failure to prosecute for more than five years. 170 So. 502.
 

 After the, jactitation action was dismissed, Manuel Bell, Jr., in order to simplify the matter, acquired the undivided interest of the other .coheirs and then instituted suit No. 11,289, in June 1936, for the purpose of annulling the tax sale and the monition judgment, on the grounds of fraud. A notice of lis pendens was recorded. The fraud in connection with the proceeding*! to quiet the title consisted of the false allegations that the plaintiff did not know the heirs of Manuel Bell,i Sr., or where they resided, when it was clearly shown that some of them occupied the very property in question. The district judge concluded that Joseph Staring and his son, Dr. Houston L. Staring, had flagrantly defrauded Manuel Bell, Jr., and his coheirs and on June 1, 1937, set aside the tax sale
 
 *153
 
 as well as the judgment in the monition proceedings. The Canal Bank was not made a party to this litigation.
 

 In the instant case, counsel for the Canal Bank objected to the admissibility of the record and the judgment in suit No. 11,289 “as being irrelevant and immaterial for the reason that defendant, Canal Bank, was not a party to said suit and, therefore, not bound by any judgment rendered therein, and for the further reason that at the time said judgment was rendered, defendant had purchased the property involved at Sheriffs sale under a foreclosure proceeding in suit No. 7528 of the docket of this Court, and was the record owner of said property, as per act in Conveyance Book 341, folio 250 of the records of this Parish.” The property was purchased at Sheriff’s sale by the Canal Bank on April 24, 1937, and judgment was rendered in suit No. 11,289 on June 1, 1937.
 

 The plaintiff in the present case did not allege nor did he offer any verbal or written evidence to show that the Canal Bank or the Prudential Life Insurance Company of America .had any knowledge or information concerning the fraud perpetrated upon plaintiff and his coheirs by Joseph Staring and Dr. Houston L. Staring, or that either the Bank or the Insurance Company had been named as a party or participated in the annulment proceedings. The record shows the contrary. He stood squarely on the judgment of annulment, which was rendered solely and only against the Succession of Dr. Houston L. Staring, through his widow as executrix. This judgment was inadmissible against and not binding on the Canal Bank, as neither it nor its transferrer, the Insurance Company, were parties to .that litigation, and were therefore not bound by what took place in that suit.
 

 In the early case of Baptiste v. Souli.e, 13 La. 268, it was held that the record and' the judgment of a suit between other persons and the plaintiff, are not admissible in evidence, except to show that such judgment was rendered; and that the parol evidence on which it was obtained cannot, because it forms a part of the record, be received as proof in another suit against a different party. Erwin v. Bank of Kentucky, 5 La.Ann. 1; Zeigler v. Interior Decorating Co., 116 La. 752, 41 So. 59; State v. Ayles, 120 La. 661, 45 So. 540; Foutelet et al. v. Murrell, 9 La. 291; Lacassagne v. Abraham, 48 La.Ann. 1160, 20 So. 672; and Rauschkolb v. Di Matteo, 190 La. 7, 181 So. 555.
 

 The jurisprudence is clear under the law of registry that a purchaser of real estate in good faith from the owner of record and without notice cannot be affected by latent equities and secret rights which may have existed in favor of former owners of the property dehors the public records. Duson et al. v. Roos et al., 123 La. 835, 49 So. 590, 131 Am.St.Rep. 375; Joffrion v. Gumbel, 123 La. 391, 48 So. 1007; Cooper v. Edwards, 152 La. 23, 92 So. 721; Vestal v. Producer’s Oil Company et al., 135 La. 984, 66 So. 334; Doiron v. Lock, Moore & Co., 165 La. 57, 115 So. 366; Jackson v. Creswell, 147 La. 914, 915, 86 So. 329; Hughes v. Morrissey, 169 La. 176, 181, 124 So. 772; Harris et al. v.
 
 *155
 
 United Gas Public Service Co. et al., 181 La. 983, 160 So. 785; Jefferson v. Childers, 189 La. 46, 179 So. 30; Rauschkolb v. Di Matteo, supra; Goldsmith v. McCoy, 182 So. 519, 190 La. 320; and Alliance Trust Co., Ltd., v. Streater Investment Co., 182 La. 102, 161 So. 168.
 

 The law is well settled that a third person can acquire a good title to immovable property from the owner of record, even though he has been apprised of the equities or rights of others in the property that did not appear of record, in accordance with the law of registry. Westwego Canal & Terminal Company, Inc. v. Pizanie, 174 La. 1068, 142 So. 691; McDuffie v. Walker, 125 La. 152, 51 So. 100; Gonsoulin v. Sparrow, 150 La. 103, 90 So. 528; State ex rel. Hebert v. Recorder of Mortgages, 175 La. 94, 143 So. 15; and Tharp v. Richardson, 179 La. 829, 155 So. 239.
 

 The Prudential Insurance Company of America, having been granted a mortgage on the property on April 16, 1927, to secure the note of $1500, which sum of money it advanced to Dr. Houston L. Staring, who was the sole and only record owner of the property — and there being nothing registered or recorded in connection with the title to show any defects therein or equities or rights of Manuel Bell, Sr., or his heirs, the Insurance Company, as a third party, relying upon the public records and the law of registry is protected against latent rights and secret equities of former owners dehors the record. The Canal Bank & Trust Company, in Liquidation, having purchased, in due course of business, the note secured by the mortgage, without any knowledge or notice of the claims or rights of the heirs of Manuel Bell, Sr., certainly acquired the same rights obtained by the Prudential Insurance Company of America in the mortgage and the note.
 

 The Court of Appeal granted a rehearing to consider the question of whether the fact that Manuel Bell, Jr., and the coheirs remained in possession of ten acres of the land was sufficient to apprise the Prudential Insurance Company in 1927, when it obtained the mortgage, of the unrecorded equities and rights of the claimants. As pointed out by the Court of Appeal, there is no law to the effect that the prospective mortgagee or purchaser of real estate shall interview the occupants of the land sought to be mortgaged or sold by the record owner, in order to determine if there are any outstanding latent rights or equities in the property. Such a holding would destroy the law of registry, which is based upon sound public policy of stable and clear titles to realty.
 

 Counsel for Manuel Bell, Jr., argues that the situation presented in this litigation is comparable to that created by a third person, who illegally and fraudulently changed the public records without the knowledge, consent or authorization of the record owner, so as to show in another, either title or other interest in the property. Of course, it has been decided many times by this' Court that the rights of the lawful recorded owner cannot be affected by the fraudulent and illegal acts of other persons who have changed the- public' records without his knowledge, consent or au
 
 *157
 
 thorization, or because of his negligence or laches.
 

 In the instant case, it is our opinion that Manuel Bell, Jr., and his coheirs were guilty of both negligence and laches in trusting another person to pay the taxes on the lands in which they had an interest, without checking the public records to see if the party to whom this task was entrusted had properly carried it out. If they had merely required Joseph Staring or Dr. Houston L. Staring to exhibit the tax receipts to them, they would have quickly learned of the deception and fraud, because he would have been unable to do so in 1912 and thereafter the receipts would have revealed that the property was assessed in his name and the claimants could then have promptly instituted the proper proceedings to protect their rights, before innocent third persons, relying on the public records, obtained intervening rights. We do not mean to intimate that, just because these apparently uninformed people trusted the 'Starings and placed implicit faith in their honesty and integrity, that the Starings were in any way justified in perpetrating this terrible fraud and injustice upon them. But, we simply are pointing out that it was due to their fault that this deplorable and unfortunate situation was made possible and as between these victims and the bona fide parties who dealt with the property on the faith of the public records, they must bear the loss.
 

 It is said that a mortgage, unlike negotiable paper, does not convey to the transferee any greater right than the transferrer might have had and the equities between the original parties may be pleaded. It is clear that a mortgage is 'not a negotiable instrument under the Negotiable Instrument Statute, Act No. 64 of 1904, but it is likewise true that the transferee of the mortgage is entitled to the same rights as the transferrer. In the instant case, the Prudential Life Insurance Company of America, an innocent party, which took the mortgage from the record owner, relying upon the public records and law of registry, which in no way indicated the latent rights and equities of the claimants, was entitled to a superior and better right to the property over the claimants. The Canal Bank, its transferee, was likewise entitled to assert the sáme right.
 

 It is our conclusion that the judgments of the Court of Appeal are correct and in accordance with the law of registry and the jurisprudence of this State.
 

 For the reasons assigned, the judgments of the Court of Appeal are affirmed, at relator’s costs.