HERGET, Judge
(dissenting).
Amite Finance Company instituted suit against Jeff Easley alleging it was the owner and holder for a valuable consideration of a note dated June 18, 1957 in the amount of $3,750 signed by Defendant made payable to R. P. Watkins and by R. P. Watkins endorsed by an act of notarial transfer dated April 2, 1963 to Amite Finance Company; said note calling for 10 payments of $125 each, skip 2 months, 10 payments more at $125 per month, skip two months, and 10 payments of $125 each, said note stipulating that if any installment is past due, the entire obligation is matured, and calling for reasonable attorney fees if placed in the hands of an attorney for collection.
It further alleged that Defendant’s failure to pay the installments when due made the entire amount of $2,961.20 due and to secure the payment of said note, Defendant mortgaged a 1957 Chevrolet and one 21-foot Ward body, giving the motor and serial number and prayed for the issuance of a writ of sequestration, which was ordered.
Defendant answered, generally denying the allegations of Plaintiff’s petition, and, further answering, alleged that on December 19, 1962 Defendant sold the truck sequestered to one Delma Populis for $5,000 and the purchase price of the truck was financed by Amite Finance Company, Plaintiff herein, which paid the balance of the note described in Article 2 of said Plaintiff’s petition and also any other debt which Defendant owed to Plaintiff and its check issued to Defendant for the difference between the indebtedness owed to Plaintiff and $5,000, the consideration of the sale, which was $1,954.38. Defendant further alleging, the debt had been paid in full, the truck sequestered in the proceeding no longer *693 being the property of Defendant to the knowledge of Plaintiff, prayed for judgment rejecting the demands of Plaintiff at its costs.
In a separate suit brought by Hood Motor Company, Incorporated v. Jeff Easley, Plaintiff alleged Defendant to be indebted unto it in the sum of $2100 for goods and merchandise sold to Defendant, as more fully shown by reference to an itemized statement annexed to the petition. The alleged itemized statement of account consisted of an affidavit executed by A. E. Hood, Jr., Secretary-Treasurer of Hood Motor Company, Incorporated, who deposed and said Jeff Easley was indebted unto Hood Motor Company, Incorporated in the amount of $2100, consisting of a $1,954.38 check given Jeff Easley in December, 1962 and $145.62 on open account for goods and merchandise purchased during 1962 on a running open account for gas, oil, repairs, et cetera to various vehicles owned by Jeff Easley.
Defendant answered this suit denying generally the allegations of Plaintiff’s petition, and, further answering, alleged Defendant would show any and all debts owed by Jeff Easley to Hood Motor Company, Inc. were paid on or about December 19, 1962, including the account here sued upon, and prayed for judgment rejecting Plaintiff’s demands at its costs.
There is in the record no stipulation for the consolidation of the cases. A single judgment was rendered, captioned: “Amite Finance Company Vs. 26704 Jeff Easley” and “Hood Motor Company, Inc. Vs. 26705 Jeff Easley”, in which judgment the recitation was made these consolidated cases having been tried, judgment was rendered in favor of plaintiff, Hood Motor Company, Incorporated against defendant, Jeff Easley, in the sum of $2,100 with legal interest from date of judicial demand until paid and all costs of these proceedings. And it was further ordered that there be judgment in favor of Amite Finance Company against Jeff Easley in the sum of $2,961.20 together with legal interest from date of judicial demand and attorney’s fees in the amount of 25% of the aggregate of principal and interest and all costs of this proceeding and maintaining a writ of sequestration on the Chevrolet school bus seized and ordering that same be sold, with appraisement, and the proceeds paid to Amite Finance Company in satisfaction of th-e judgment by preference and priority.
From this judgment defendant, Jeff Easley, perfected separate devolutive appeals to this Court.
In the case of Amite Finance Company v. Jeff Easley, the only instrument attached to the suit and offered on the trial of the case is one bearing the title “Chattel Mortgage” dated June 18, 1957, signed by Jeff Easley and R. P. Watkins, payable at the office of R. P. Watkins in the amount of $3,942 of which $192 was payable on or before delivery of a Chevrolet described therein, being the same as that sequestered in these proceedings, and for the balance of $3,750 same was payable in thirty monthly installments of $125 each thereafter, described supra. On the reverse of the instrument there is the notation in handwriting: “Pay to Amite Finance Co., R. P. Watkins” and paraphed “ ‘Ne Varietur’ Identified with an act of Notarial Transfer before me this 2nd day of April 1963. Joseph H. Simpson, Notary Public.” And there was also filed a Notarial Endorsement and Assignment of Mortgage Note executed by R. P. Watkins before Joseph H. Simpson, Notary Public, in which this instrument is described as a chattel mortgage note.
This instrument is not a negotiable instrument. A mortgage is not a negotiable instrument under the negotiable instrument statute. Bell v. Canal Bank and Trust Company, 193 La. 142, 190 So. 359, and under the provisions of LSA-R.S. 7:1, not being made payable to “Order” or to “Bearer”, does not conform to the requirement essential to constitute same a negotiable instrument. I further observe, in the instru *694 ment itself, which was offered, provision is made for reasonable attorney’s fee in the event of non-payment, and judgment was rendered awarding Plaintiff 25% attorney fees with no evidence in the record to show same was a reasonable attorney’s fee.
Defendant made no specific objection to the introduction of the alleged instrument as proof of the indebtedness, but did file a general denial and pled payment of the obligation.
Accordingly, without recognizing such proof is sufficient to justify the judgment in favor of plaintiff, Amite Finance Company, against Defendant, but recognizing that a specific plea of payment is an admission of the correctness of the account, [Monroe Gro. Co. v. Barron, 16 La.App. 357, 134 So. 735], I come to the question of payment, specifically pled by Defendant in his answer, and there is presented for my review most unusual circumstances. According to the evidence submitted, defendant, Jeff Easley, operated the school bus in the Fifth Ward of Tangipahoa Parish, which he had purchased from plaintiff, Amite Finance Company. Because complaints had been made by parents of children passengers of the school bus to the then School Board member from that ward, Mrs. Celeste Mixon, to the effect that Defendant used profanity in the presence of the children and that he permitted his eighteen year old son to operate the bus, Mrs. Mixon contacted Mr. Dewitt Sauls, who was Supervisor of Tangipahoa school bus transportation, and informed him she intended to make charges against Mr. Easley. Mr. Sauls called Mr. Easley to his office, informed him of the possibility of charges being brought against him and suggested to Easley because of his circumstances of being sick it would be best for him to “get disability retirement”. This conversation took place in November of 1962 and because applications for retirement must be filed 30 to 60 days prior to going into effect, Mr. Sauls said he desired to have same processed immediately so it could be effective January 1, 1963. Following this conversation with Mr. Sauls, Defendant contacted Mr. Delma Populis for the purpose of selling the school bus. Here is where the alleged factual situation becomes unusual. Testimony was offered that the school bus driver, in selling his bus also sells the school bus route. Mr. Tom Smith had been elected to the School Board from Ward 5 but had not been inducted into office, which was to be done January 1, 1963. Mr. Easley brought Mr. Populis to see Mr. Smith and obtained his approval of Mr. Populis as the school bus driver in his place. Mr. Easley had previously accompanied Mr. Populis to the office of Mr. A. E. Hood, Jr., Secretary-Treasurer of Amite Finance Company, so that Mr. Populis could make financial arrangements to purchase the bus. On December 19, 1962 Mr. Easley and Mr. Populis met in Mr. Hood’s office and there executed an instrument labelled “Affidavit of Donation or Isolated (Occasional) Sale” signed by Jeff Easley and Delma Populis in the presence of A. L. Robinson and E. V. Ballard, who signed as witnesses, for the purported consideration of $6,660, whereby Easley conveyed to Populis the school bus and executed an assignment of title to Delma Populis. Delma Populis executed an instrument making application for Certificate of Title to the school bus and executed an instrument which is entitled “Transfer of Equity” to Hood Motor Company, Incorporated, of the school bus for $6,660. Upon the signing of these instruments, Mr. Hood deducted from the sum of $5,000 (1) the alleged balance owed by Mr. Easley to' the Amite Finance Company on the purported mortgage note of Easley’s held by it affecting the school bus, and (2) the' balance on the account owed by Mr. Easley to Hood Motor Company for purchases, from it made by Easley, and (3) gave Easley a check for $1,954.38 representing the equity owned by him in the school bus. after deducting the first two amounts. Though the sale from Easley to Populis and the transfer of equity from Populis, *695 to Amite Finance Company was for the sum of $6,660, the difference between $5,000 and $6,660 represented carrying charges.
The instruments referred to, all labelled P-1 and introduced in evidence, were retained by Amite Finance Company, and never transmitted to the Motor Vehicle Bureau, nor were any of the instruments recorded.
Despite the promises made by Mr. Smith, the School Board did not employ Mr. Populis as a school bus operator. Whereupon, Mr. Easley, at the requests of Mr. Hood and Mr. Populis, attended the School Board meeting and sought to have Mr. Populis accepted and also importuned the services of the State Superintendent of Education, Mr. Jackson, to accomplish this result, however, without success.
Plaintiffs now maintain the payment made to Easley was conditioned upon his selling the school bus route along with the school bus to Populis, and as he failed to so deliver, the sale of the school bus was not confected.
In my opinion Mr. Easley had no right to sell the school bus route as such and the evidence does not warrant the con•clusion such was his contract. He could only surrender the right the School Board had accorded to him to the route, which he did.
The majority, without citation of authority, have reached conclusions of law with which I must confess I am not familiar. The evidence offered unquestionably shows Mr. Easley sold his school bus to Mr. Populis. The sale was complete. Mr. Populis sold the school bus to Hood Motor Company, Inc. Despite the fact no such relief was sought nor even prayed for and though Mr. Populis [who alone might have a cause of action to set aside the sale of the school bus by Easley to him] is not a party to these suits and •despite the fact plaintiff, Hood Motor Company, Incorporated, by the evidence is :shown to be the owner of the school bus, the majority have rendered judgment setting aside the sales of the school bus by Easley to Populis and by Populis to Plood Motor Company, Incorporated and have recognized said Plaintiff’s right to the sequestration of said bus and privilege thereon and ordered the sale of said bus to pay Plaintiff’s claim.
For these reasons I am of the opinion judgment should be rendered in favor of Jeff Easley against Hood Motor Company, Inc. and against Amite Finance Company, rejecting the demands of - said Plaintiffs and dismissing their suits at their costs.
I respectfully dissent