State vs. Cancienne.

## No. 12,920.

### THE STATE OF LOUISIANA VS. JUSTIN CANCIENNE.

It is not error of the trial judge to refuse permission to counsel for the accused, to address his argument to the jury in the French languge on the ground that it was their mother tongue, the jurors having been examined on their *voir dire* and cross-examined in the English language and without objection on the part of the accused, and all the witnesses for the State and for the defence having been interrogated and cross-interrrogated in English.

It is not error of the trial judge to exercise control of counsel for the accused with regard to the extent of his cross-examination of a juror on his *voir dire*, if same be reasonably exercised.

If in point of fact the discretion of the trial judge has been erroneously exercised in this regard, the accused has no ground of complaint if the record discloses that he was not thereby compelled to take on the panel an obnoxious juror who voted in favor of his conviction during the deliberations of the jury.

ON APPEAL from the Eighteenth Judicial District Court for the Parish of Lafourche. *Caillouet, J.*

*M. J. Cunningham*, Attorney General, and *L. C. Moise*, District Attorney, for Plaintiff, Appellee.

*Clay Knobloch* and *Howell & Martin* for Defendant, Appellant.

Argued and submitted November 12, 1898.
Opinion handed down December 5, 1898.

The opinion of the court was delivered by

WATKINS, J.  Originally the defendant was indicted for the crime of having murdered his wife, was found guilty of manslaughter, and sentenced to imprisonment in the penitentiary for a term of eighteen months; and from the verdict and sentence he successfully prosecuted an appeal to this court—the cause having been remanded for a new trial.  50 An.

On the second trial in the lower court, the jury again found him guilty of manslaughter, and being again sentenced to the same period of imprisonment, he prosecutes a second appeal therefrom.

It is discoverable from our original opinion, and the recitals of fact which are therein extracted from the various bills of exception,

that the defence of the accused was twofold: (1) that having suddenly taken his wife in the *act of adultery* with one Delatto, in his defendant's own house and upon his bed, he was precipitated into such a state of mental excitement and fury as to have rendered him unaccountable for her homicide; (2) that having under the circumstances, fired on Delatto, his wife seized his (defendant's) hand and arms, and attempted to disarm him (she being the more powerful of the two), and called Delatto to come to her assistance, and that they would kill him, he was entitled to introduce evidence tending to establish the plea of self-defence.

It is also discoverable from our opinion that the trend of all the defendant's bills of exceptions was in the direction of these two defences; and further, that whilst the fact of having caught his wife in the act of adultery was not a justification of the defendant's homicide of his wife, yet, it was sufficient to relieve him of the charge of being technically the aggressor in the fray, and render proof of self-defence admissible.

On this question we quote the following from our opinion, viz.:

"We think there is a difference between the case of a person who, having originally no immediate cause of provocation himself, should originate a difficulty, which, in its after phases, would lead to his killing the person whom he led into it, and that of a man who, entering his own home, is there brought to face a scene calculated to throw him into a condition of frenzy, under the influence of which he commits an act which, though not legally excusable, comes near the border line of justification.

"We think the situation was such as to justify us in referring the origin of the difficulty to the wife and her paramour as the aggressors, sufficiently so to open the door to submission to a jury of the plea of 'self-defence,' when in one of the after phases of the difficulty the husband's life had been placed in danger by one of them, and, in order to save the same, he had killed the party making the killing necessary.

"We think the rigor of the rule which the court refers to should be relaxed in a case of this character, and that the matter of self-defence should have been submitted to the jury, to be by it passed upon under the whole evidence, and that the excluded testimony could legally have formed part of it."

The foregoing sufficiently indicates the reasons this court enter-

tained for having set aside the verdict of the jury and granted a new trial; and when the case went back to the lower court and the new trial was had, the question of justification was eliminated, and the testimony in support of self-defence was admitted and heard by the jury—the trial judge having given the jury instructions in his general charge relative to the law of self-defence.

## I.

The first bill of exceptions which attracts attention is that directed to the trial judge's refusal to allow the defendant's leading counsel to address the jury in the French language—it being therein assigned (1) that the mother tongue of every member of the jury is French; (2) the mother tongue of the judge is French; (3) the mother tongue of the defendant's counsel is French; (4) and that the district attorney understands French better than a majority of the petit jury understands English.

This request having been objected to by the district attorney, and the objection having been sustained, the court assigned as the reason for his ruling, *inter alios*, that the district attorney "did not understand the French language sufficiently well to follow the argument of counsel (for the defendant);" but that the district attorney stated to the counsel, that if he "wanted to state certain things, or parts of his argument in French, and would inform him, district attorney, in English of the meaning thereof, that he would make no objection to such proceedings."

The judge then stated that his ruling was to the effect that upon objection being made by either counsel, "the proceedings would have to be carried on in English, the language of the Constitution."

He further stated, "that up to that time all the proceeding in the trial had been carried on in English; that the jurors had all been examined in English on their *voir dire*, and answered satisfactorily; that the witnesses had been examined, and testified in English; and that no question had been raised that the jurors did not understand the English language sufficiently to sit on the case. That from the examination of the jurors on their *voir dire*, the court was satisfied that they understood the English language well enough to try the case, and nothing transpired during the whole trial to cause (him) to change that opinion."

This statement by the court is a full and complete answer to the

objections of counsel; and we are of the opinion that the ruling was correct. The only ground upon which counsel could have reasonably based his claim was, that the jury understood the English language so imperfectly they would be unable to appreciate or fully comprehend an argument in same; but as the same reason applied with equal force to the interrogation and cross-interrogation of the jurors themselves and of the witnesses, it must be necessarily assumed that their knowledge of English was sufficient for all necessary purposes.

Otherwise they could not have understood and appreciated the reading of the indictment, which is couched in English and not in French.

### II.

The second bill of exceptions relates to the refusal of the judge to give to the jury the following special charge, viz.:

"When the intellectual power of a person to resist is for the time obliterated through an overwhelming violence of mental disease, he is not a responsible moral agent; but if he had power of mind enough to be conscious of what he was doing at the time the homicide occurred —if you find that the accused killed his wife, and that he could distinguish between right and wrong—he is responsible."

The judge assigns as the reason for his refusal to so charge the jury, " that even if the requested charge be good law, it had no earthly application to the facts of the case at bar, and to have charged it to the jury would have been to confuse them unnecessarily."

The judge then makes reference to a similar charge which was requested by counsel for the accused at the former trial, and the view taken of it in our opinion, and then says:

"It might be noted, *en passant*, that there was not before the jury the slightest evidence of the accused suffering at the time from any *mental disease*.  He was excited at the time, naturally, but not to such an extent as not to note what transpired; for, as stated before, he testified minutely and in detail upon the subject.  He did not claim that he was jealous, but did say that he never suspected his wife of wrong-doing before."

The charge requested involves the law of insanity, and inasmuch as the judge states that such a charge was wholly inapplicable to the proven facts of the case, he was right in refusing to give the charge, this court being conclusively bound to accept the judge's statement as to what the testimony was on the trial.

### III.

The next bill of exceptions challenges the correctness of the following extract from the general charge, viz.:

"If you find from the evidence that the accused unlawfully killed his wife, the person described in the indictment, and that he was not justified in self-defence in doing the killing, your verdict should be guilty," etc.

Same is alleged to be incorrect in two particulars, (1) in that it trenches upon the facts adduced on the trial, and (2) that it was equivalent to instructing the jury "that the only lawful defence in cases of homicide is self-defence, and practically instructing the jury that self-defence was, in point of fact, the only defence in the case at bar, thus instructing them to exclude and reject any other defence made in the case."

The court, in its reasons, reiterates the facts of the case as they have been substantially related in other bills of exception which were reserved at the two trials, and stated, as we have previously said, that there were but two substantial defences set up by the accused, (1) justification, and (2) self-defence, and as the former had been eliminated, the latter remained practically as the only one.

He further stated that, "as a matter of fact, self-defence was the only defence set up in this case by the accused himself when he testified in the case, as will be more fully seen by reference to his testimony certified to the appellate court, in the court's reasons for refusing the requested charge on the doctrine of insanity, to which reference is here made."

The charge seems to us to have been entirely appropriate under the circumstances and situation of the case; and in our appreciation of the language in which it is couched, it does not trench upon the facts.

### IV.

The next bill of exceptions relates to the action of the trial judge in preventing the leading counsel from continuing an examination of a juror on his *voir dire* which had been commenced by his associate counsel.

The bill relates that after the juror had been examined by the District Attorney, and he had been cross-examined by one of the associate counsel for the defendant, the leading counsel for the defendant " began to ask a question of the juror, and before he could

complete the question, or remotely disclose the sense, purport, relevancy or pertinency of the question, the trial judge stopped said counsel, and spoke as follows: ' This examination has gone far enough; the court is satisfied that the juror is a competent juror.' "

The response of the judge is, that when the leading counsel for the accused began to interrogate the juror, he assumed that his examination would be a continuation upon the *same line* on which his associate counsel had already interrogated him " and interrupted counsel by announcing that the examination had proceeded far enough, and that he was satisfied of the juror's competency."

That when the counsel protested against this interruption, "the court informed counsel that it was under the impression that he was about to continue the examination on the same line on which his colleague had just examined the juror, on which point it was of opinion that the examination had gone far enough; but that if the court was mistaken in its assumption, and if counsel was about to examine the juror on *other points*, he could proceed with his examination. Counsel then remarked that it was too late, that his bill was taken;" and he then challenged the juror peremptorily.

The judge then adds this statement, viz.:

" Thereafter the accused exhausted his peremptory challenges, there being at the time said challenges were exhausted eleven jurors already accepted and sworn; and the juror Philip Pitre was the only juror accepted and sworn after said peremptory challenges had been exhausted. This juror, Philip Pitre, upon the polling of the jury, after the jury returned with their verdict, upon being asked the question, ' Is guilty your verdict?' answered 'No.' It thus appears that even if the court should have abused its discretion in stopping the further examination of the juror in the matter complained of, the accused is not in a position to take advantage of it, as he has suffered no injury, the only juror forced on him voting against finding him guilty."

In our opinion, the answer of the judge to the complaint urged by counsel is complete, for the reason that the trial judge is vested with the fullest discretion in the control and management of the proceedings at the trial, and is necessarily the proper person to determine the latitude to be allowed the cross examination of the juror on his *voir dire*.

On this ground, we approve the ruling of the trial judge.

84

. V. .

The next bill of exceptions relates to the refusal of the trial judge to give to the jury the following special charge, viz.:

" The burden of proof throughout the trial is on the State, and the State must establish every fact required by the law to prove the guilt of the accused; one of these essential facts is that the accused was of sound mind and discretion at the time the homicide was committed. This fact, however, can be established by presumptive as well as by direct evidence. The law presumes every man to be of sound mind, until the contrary is shown by good and sufficient evidence. If the evi dence raises in your minds a reasonable doubt as to the sanity of the defendant at the time the homicide was committed, if you find any such homicide was committed, and such doubt reasonably and necessarily arises from the evidence, then it becomes your duty to give the benefit of the doubt to the accused, and acquit."

The judge declined to so charge the jury, because it was altogether inapplicable to the proven facts in the case.

The foregoing bill, in its entirety, is quite similar to the one which is discussed in paragraph II of this opinion, and the views we have therein expressed are strictly applicable thereto.

The foregoing are all the bills of exception we have found in the record. There was a motion for new trial and one in arrest of judgment, but as no bills of exceptions were retained to their refusal, we can not deal with them at all.

Judgment affirmed.