LAND, J.
The defendant was indicted for murder, tried, and, having been found guilty without capital punishment, was sentenced to the State Penitentiary for the term of his natural life.
Defendant has appealed from this sentence, but his counsel has filed in this court neither assignment of errors nor brief.
The record discloses a motion to quash the venire, a motion in arrest, and several bills of exception.
The motion to quash the venire sets up several grounds of objection, none of which were adverted to in the bill of exception to the overruling of the motion, except that the venire “had only been drawn and advertised ten days.”
The trial judge states in the per curiam part of the bill, that the venire was drawn on March 22, 1905, and was published in the official journal of the parish on and from March 23d to the end of the term on April 29, 1905. We concur in the opinion of the trial judge that Act No. 135, p. 216, of 1898, the general law of the state, does not require the list of jurors to be published or posted for any particular time. Hence the contention that said list should have been published for 30 -days is without merit.
The second bill of exception is, in effect, that three jurors were absent when the court ordered the trial to proceed. One of these absent jurors was excused on ’ the ground of sickness, as'shown by the certificate of his physician; another was excused by consent of counsel for the accused; and the third was a convict guard at Hope Plantation, a state farm, and the court ordered an attachment to issue under which the absent juror was brought in on the next day. When the ease was called for trial the counsel for the accused announced himself ready, and made no objection to proceeding in the absence of the juror for whom an attachment had issued. The accused cannot complain that particular jurors were excused or were absent, there being a sufficient number present to complete the panel. State v. Kane, 32 La. Ann. 999; State v. Rountree, 32 La. Ann. 1144; State v. Somnier, 33 La. Ann. 237.
The third bill is disposed of by remarking that the statement of the witness was not hearsay, as contended by counsel for the defendant, but was a declaration of the accused made at the time of, or immediately after, the killing.
The fourth bill was taken to a question propounded by the state to the coroner, as follows, viz.: “Was the witness Hannah
Hector present when you held the inquest on this body?” The bill does not recite how this question was answered by the coroner, and therefore shows no prejudice to the accused. The fact that the particular witness was present at the inquest may have been proper and relevant as corroborative of her testimony. If the presence of the witness at the inquest was immaterial and irrelevant, we do not see how the accused was injured by an idle question and idle an swer.
The fifth bill was reserved to the same question to the coroner, and also to several others propounded to the same official, who was put upon the stand as an expert. The coroner was asked, “What kind of weapon inflicted this wound described?” The objec *115 tion was that the coroner was not an eyewitness to the homicide, and that any expression of his was a mere matter of opinion.
The bill does not recite the answer of the coroner, and therefore does not show prejudice to the accused.
The judge’s per curiam shows that the coroner had examined the body of the deceased, and had described the wounds, stating, among other matters, “that a part of the quilt covering the deceased was imbedded in the wound.”
As stated above, the bill does not recite the answer to the question, but we infer from the next question that the coroner answered that the weapon used was a gun.
It is well settled that physicians and surgeons may give their opinions as to the cause of death, the manner in which a mortal wound was probably inflicted, the degree of force employed, the direction of the blow, etc., such opinion being based upon knowledge derived from professional attendance on the deceased, or from examination or from hypothetical statements. 12 Am. & Eng. Ene. Law, p. 444; Underhill on Criminal Evidence, p. 372.
The question was therefore a proper one to be put to an expert physican or surgeon, who had made a personal examination of the wound.
The next question was as follows, to wit: “From the nature of the wound, how far was the party who held the gun from the deceased?” The bill does not recite the answer of the witness. The objection was that there was no evidence as to the distance between the parties, that any evidence on the part of the coroner would be a mere matter of opinion, and that the coroner’s evidence was only admissible to prove death and the cause of death.
As stated already, the coroner testified as an expert physician and surgeon. We do not know what he answered, but see no reason why the question should not have been propounded to an expert, and answered' by him, if his scientific knowledge was sufficient to enable him to answer intelligently. Under the facts stated even a layman might say that the muzzle of the gun when discharged must have been very close to the body of the victim.
The last bill was reserved to the overruling of the motion for arrest of judgment on the ground that the indictment did not charge that the accused committed the homicide “with prepense, which is the most essential element going to show malice aforethought.”
Our statute provides that “it shall be sufficient in every indictment for murder to charge that the defendant did feloniously, willfully and of his malice aforethought, kill and murder the deceased.” Rev. St. § 1048. The indictment follows the words of the statute.
The case has been submitted to this court without assignment of error, argument, or brief on behalf of the accused, but nevertheless we have carefully considered all the bills of exception reserved, and, finding no prejudicial error in the rulings below, must affirm the sentence.
Judgment affirmed.