(83 South. 181)

No. 23541.

STATE v. SHARP et al.

(June 30, 1919.   Rehearing Denied Nov. 4, 1919.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW ☞957(1)—IMPEACHMENT OF VERDICT; STATEMENT OF JUROR INADMISSIBLE.

A statement made by a juror in a criminal case, while the case is under consideration and submission, and offered to be proved by his fellow jurors, on a motion for new trial, with a view of showing that he was incompetent by reason of prejudice, can have no other purpose than to impeach the verdict, and is properly excluded.

2. CRIMINAL LAW ☞479—MEDICAL EXPERTS; TESTIMONY OF SURGEON AND CORONER AS TO CAUSE OF DEATH.

A surgeon and acting coroner, who has held an inquest upon the body of a person slain by a gunshot, may testify as an expert as to the cause of death and the probability vel non of suicide.

3. CRIMINAL LAW ☞960—NEW TRIAL; PRESENCE OF ACCUSED AT HEARING.

The consensus of the criminal jurisprudence in this country is to the effect that the presence of the convict at the hearing of a motion for new trial is not required, and that, whether testimony be heard or not.

Appeal from Fourth Judicial District Court, Parish of Union; Joseph Burrough Crow, Judge.

Mrs. J. S. Sharp and Mrs. Lena Lockwood were convicted of murder without capital punishment, and they appeal. Affirmed.

Elder & Digby, of Monroe, and H. G. Fields, of Farmersville, for appellants.

A. V. Coco, Atty. Gen., Thomas W. Robertson, Asst. Atty. Gen., and H. B. Warren, Dist. Atty., of Ruston, for the State.

MONROE, C. J.   Defendants, Mrs. J. S. Sharp and her daughter, Mrs. Lena Lockwood, prosecute this appeal from a conviction without capital punishment and sentence, upon a charge of having murdered J. S. Sharp, the husband of the one and stepfather of the other.   A number of bills of exception appear in the record, but counsel for defendant say, in their brief:

"We find that only three of them are serious, and we will not take up the time of the court in discussing the other eleven, except where necessary to substantiate some fact in the case."

The first bill discussed bears the number 14 and reads as follows:

"Be it remembered that, on the trial of a motion for new trial, the juror G. W. Ward having been called by the state, in answer to question by the state, testified that he had not known the defendants prior to this trial, and that he had no bias or prejudice for or against them when sworn on his voir dire, and what he knew about their connection with the death of John Redden he had learned during the trial, and he was then asked by the counsel for the defendant, the defendants being absent, if the only testimony on this matter he had heard during the trial of the case proper was not from the defendant Mrs. Lockwood, and which was in reply to a question from the state, when she answered that she and her mother were present when one John Redden had died, and the juror answered affirmatively; and whereupon counsel for defendant asked him if he had not stated to the other jurors, during their deliberations and before a verdict was reached, that Sharp was not the first man Mrs. Sharp had killed, that she had killed John Redden, with whom she was living in a state of concubinage, for his money, and by poison, and that the doctors had said so, or words to that effect; and whereupon the state objected that the juror could not be heard to impeach his own verdict; and, the court having sustained said objection, the counsel for defendant excepted," etc.

[1] In his statement, made part of bill 14, the trial judge says that the foregoing is not "an accurate statement in full," and that the correct statement of the matter is that made by the district attorney and attached to bill 7, which he (the judge) adopts. Bill 7 contains the recital that, on the hearing of the motion for new trial, defendant

had called all the jurors for the purpose of proving that Ward had sworn falsely on his voir dire in saying that he had no prejudice for or against the accused and was in a position to give them a fair trial, and that the court excluded the testimony.

The statement of the district attorney (attached to bill 7) and thus adopted by the judge (as his comment on bill 14) is to the effect that the jurors were sworn and asked by counsel for defendant if the juror Ward had not made statements and arguments in the deliberations of the jury concerning the connection of one of the defendants with the death of one John Redden, some years before, to which it was objected, by the district attorney, that such evidence was not admissible to discredit or impeach the verdict, which objection was sustained; that it was admitted that Ward had sworn, on his voir dire, that he knew nothing of the case and had no bias or prejudice for or against defendants; that the district attorney called Ward to the stand (on the hearing of the motion for new trial), and he then testified that, when examined on his voir dire, he did not know · either of the defendants, and had never known them; and that he did not know that one of the defendants was the woman whose name was associated with the death of John Redden until there was testimony to that effect in the course of the trial.

The statement further recites that one of the jurors, called by defendants as a witness, on the hearing of the motion for new trial, testified (on cross-examination) that Ward did not, at any time, claim that he had an acquaintance with, or knowledge of, defendants and the relations of one of them with Redden, when he was examined and sworn as a juror; the court having admitted that negative testimony, but having refused to admit any testimony from any juror as to things said by Ward or arguments made by him during the deliberations of the jury.

We are of opinion that the ruling was correct, and that, in admitting testimony to the effect that the juror said nothing during the deliberations of the jury which would indicate that he had sworn falsely upon his examination on voir dire, the trial judge went as far as it was proper to go, and properly declined to impinge upon the rule that a juror will not be heard to discredit the verdict in which he has participated. If the deliberations of juries are to be inquired into after every conviction, and if every unguarded remark, made by, or attributed to, a juror, during such deliberations, is to be a cause for annulling the verdict, the administration of criminal justice is likely to become very difficult indeed, and the time of the courts likely to be more devoted to inquiries into the sayings and doings of the jurors than of the persons on trial before them. In State v. Howard, 144 La. 97, 80 South. 213, this court had occasion to say, concerning an effort similar to that now under consideration, in which it was argued that the purpose was, not to impeach the verdict, but to show that the juror, who had passed his examination on his voir dire, was nevertheless disqualified for bias:

"Clearly, the purpose was to prove, by witnesses who had served on the jury, that one of their number, while the case was under submission and consideration by them, had made a statement, in the presence of the other jurors, showing that he was incompetent, by reason of prejudice, to serve on the jury or participate in the verdict, and hence that the verdict which they and he agreed on * * * should be set aside; and to prove by other witnesses, nonjurors, that the same juror had made a similar statement. outside of the jury room and after the finding of the verdict, thereby, in effect, destroying the verdict in the finding of which he had just participated. The impeachment of the verdict therefore goes back to the statement of one of the jurors, in the jury room, before the finding of the verdict, and out of the jury room, after the finding; and, under settled jurisprudence, is not admissible." (Citing many authorities.)

The next bill which the counsel discuss (No. 3) shows that the state called to the stand a regular practicing physician and surgeon, who appears also to have been the acting coroner by whom the inquest was held, and offered to prove by him that, "from the location of the wound and direction of the same and location of the shots in the mantel, it was impossible for the deceased to have killed himself, accidentally or intentionally, without the help of some mechanical contrivance, and that he had found none on the premises," to which defendant's counsel objected that it was not properly expert testimony, and that the question was within the exclusive province of the jury, which objection having been overruled, the bill was reserved.

[2] There was no error in the ruling.

"A nonexpert witness may describe the wounds which he saw on the body, and, a fortiori, a surgeon may give an opinion as to the probable cause of death, and may state, when, in his opinion, death occurred, and that it was not suicidal." Underhill on Cr. Ev. (Ed. 1898) 372; 12 A. & E. Enc. of Law, p. 144; 17 Cyc. 236; State v. Baptiste, 26 La. Ann. 135; State v. Voorhies, 115 La. 200, 38 South. 964.

[3] Bill No. 8 (next discussed by the learned counsel) contains the recital that, on the hearing of the motion for new trial, the defendant not being present, but being in the jail about 100 yards distant, certain witnesses were sworn and their testimony adduced concerning the competency of the juror Ward and as to testimony given on the trial, after which the motion was argued and overruled, and that "thereupon, the presence of defendants not having been waived by defendant or their counsel, the counsel for defendants" excepted to the ruling of the court and to the absence of the accused during the taking of the evidence and the trial of the motion, which exception having been overruled, the bill was reserved.

In State v. Hardaway, 50 La. Ann. 1349, 24 South. 321, it was said:

"The personal presence of one charged with crime is not necessary or required at each and every step of his case, or when each and every proceeding is taken therein. It is only needful that his actual presence be shown during the arraignment, trial, charge, verdict, and sentence [citing many authorities, including Bishop, Cr. Proc. vol. 1, p. 276]. And to this might be added," continues the court, "the requirement of his presence at trials of motions to change the venue, etc., when evidence is submitted."

See, also, State v. Le Blanc, 116 La. 829, 41 South. 105.

As it was optional with defendants to move for a new trial, or submit to the conviction, as they thought proper, and as they were at liberty to have abandoned the motion, if they chose, we know of no theory upon which it could reasonably be held that the proceedings upon the hearing of the motion should be avoided because their counsel, seeing no useful purpose to be subserved, did not see fit to have them called into court, or to call the attention of the court to their absence, until the hearing was over.

The consensus of the criminal jurisprudence in this country is to the effect that the presence of the convict on such occasion is not required, and that, whether testimony be heard or not. 16 C. J. p. 1246, § 2760½f.

Judgment affirmed.