445 So.2d 470 (1984)
STATE of Louisiana, Appellee,
v.
Helen BECK, Appellant.
No. 15707-KA.
Court of Appeal of Louisiana, Second Circuit.
January 16, 1984.
Writ Denied March 9, 1984.
*472 Smith & Hingle by J. Randolph Smith, Monroe, for defendant.
William J. Guste, Jr., Baton Rouge, Atty. Gen., Johnny Carl Parkerson, Dist. Atty., Allen Harvey and Ellen Eade, Asst. Dist. Attys., Monroe, for the State.
Before PRICE, JASPER E. JONES and NORRIS, JJ.
JASPER E. JONES, Judge.
The defendant, Helen Beck, was convicted of second degree murder in violation of R.S. 14:30.1(1) and sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. She appeals her conviction relying on eight assignments of error.
*473 Facts
Ricky Beck, defendant's eighteen month old son, died from extensive head injuries on May 23, 1981 while a patient at St. Francis Medical Center in Monroe. He was admitted to St. Francis May 19, 1981. The cause of Ricky's injuries were investigated by the Bastrop Police Department.[1] During the course of the investigation defendant gave two recorded statements. The first was taken by Detective Gary Carver at St. Francis on May 21, 1981. It was exculpatory in nature.
The second statement was taken by Carver and Chief Harry Howard at the Bastrop Police Station on May 24, 1981. Carver and Howard picked defendant up at her aunt's home in Bastrop and brought her to the station. During the course of this statement defendant admitted having twice slammed an aluminum framed window down hard on Ricky's head. She was placed under formal arrest and then taken to her residence where she reenacted the crime for Carver and Howard.
Assignments of Error Nos. 1 and 4
By these assignments, the defendant argues that the trial court erred in failing to suppress her confession, and in allowing the introduction of the taped confession and two waiver of rights forms signed by defendant May 21 and 24, 1981.
At the hearing on the motion to suppress defendant sought to have every statement she made suppressed. These included the two recorded statements and the reenactment of the crime. After hearing the May 21 exculpatory statement at the suppression hearing, defense counsel withdrew his demand that it be suppressed. The defendant urges a number of reasons why the May 24 confession and the crime reenactment should be suppressed.
She first contends the State did not carry its burden of proving the confession and reenactment were free and voluntary. She argues she was under extreme pressure to make an inculpatory statement and was emotionally upset when she made the statements. She states that Carver subjected her to threats and made promises to induce her to give the confession.
Before a confession can be introduced into evidence, the State has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, menaces, threats, inducements or promises. La.R.S. 15:451; La.C.Cr.P. 703. The admissibility of a confession is in the first instance a question for the trial judge. His conclusions on the credibility and weight of testimony relating to the voluntariness of a confession will not be overturned on appeal unless they are not supported by the evidence. State v. Sonnier, 379 So.2d 1336 (La.1979); State v. Perry, 420 So.2d 139 (La.1982); State v. Broadway, 440 So.2d 828 (La.App. 2d Cir. 1983).
The evidence taken at the suppression hearing and at trial supports a finding that the confession and reenactment were free and voluntary and that the police did not unduly pressure defendant. At the most Carver and Howard exhorted defendant to tell the truth. A confession is not rendered inadmissible by the fact that law enforcement officers exhort or adjure a defendant to tell the truth provided the exhortation is not accompanied by an inducement in the nature of a threat or one which implies a promise of reward. State v. Mullins, 353 So.2d 243 (La.1977); State v. Hall, 434 So.2d 517 (La.App. 2d Cir. 1983).
The specific threats and promises complained of by defendant were made at the time the May 21 exculpatory statement was taken. Detective Carver told defendant he would give her a lie detector test if she did not tell the truth and if she did tell the truth she would not be taken out of St. Francis and thrown in jail. The lie detector threat may have rendered the statement *474 inadmissible if defense counsel had not specifically excluded it from his motion to suppress. However, this threat was not repeated at the time the actual confession was taken three days later.
When a defendant gives two statements and the first is inadmissible as being illegally obtained, the second statement may, nevertheless, be admissible if it is not obtained by exploitation of the initial illegality, but instead is shown by the State to be sufficiently an act of free will entirely purged of and independent of the primary taint. State v. Young, 344 So.2d 983 (La. 1977); State v. Davis, 336 So.2d 805 (La. 1976). See also State v. Welch, 337 So.2d 1114 (La.1976).
In the instant case the confession was not obtained by exploitation of the threat made three days earlier. At the time defendant confessed she was given two fresh sets of Miranda warnings and she indicated she understood her rights and desired to waive them. Furthermore, the threat and promise were not repeated. We are satisfied the State demonstrated that defendant's confession was an act of free will, completely independent of the threats made during her earlier interrogation.
Emotional distress is not grounds for rendering a confession inadmissible unless it is so severe that the party confessing is unable to voluntarily do so. See State v. Williams, 383 So.2d 369 (La.1980). While defendant cried and trembled during her interrogation, she did not become overly emotional or lose control. The record supports the trial court's finding that defendant's emotional distress did not affect the voluntariness of her confession.
Defendant next contends it was not shown that she fully understood her constitutional rights as per Miranda. Thus, her waiver of those rights was invalid.
It is well settled that for a waiver of constitutional rights to be valid, the State carries a heavy burden of proving the waiver was knowingly and intelligently made. See Tague v. Louisiana, 444 U.S. 469, 100 S.Ct. 652, 62 L.Ed.2d 622 (1980); State v. Penns, 407 So.2d 678 (La.1981).
At the time defendant confessed she was 17 years of age, had a ninth grade education and testified she could read, write and understand the English language. On both occasions that she gave statements, her Miranda rights were read to her as she read along with the officers, before she signed the waiver forms. She indicated that she understood these rights. Her complaint is that she indicated to the officers she could not read some of the words on the waiver form. In light of her positive statement that she understood the words, and her rights, when they were read to her, her inability to read all of the words on the waiver form does not render her waiver invalid.
Defendant also contends the confession and reenactment were the products of an illegal arrest and should have been suppressed. She argues that she was constructively under arrest when the officers picked her up for questioning on May 24 and at the time there was no probable cause for her arrest. For purposes of discussion, we assume that defendant was under arrest at the time she was picked up. The arrest was made without a warrant.
A confession or inculpatory statement, which is the direct result of an illegal arrest, should be suppressed. State v. Rebstock, 418 So.2d 1306 (La.1982); State v. Edwards, 375 So.2d 1365 (La. 1979); State v. Giovanni, 375 So.2d 1360 (La.1979). In order for a warrantless arrest to be legal, it must be based on probable cause. State v. Bell, 395 So.2d 805 (La.1981); State v. Thomas, 349 So.2d 270 (La.1977).
The applicable standard for testing probable cause to arrest was set out by the supreme court in State v. Collins, 378 So.2d 928 (La.1979) as follows:
Probable cause to arrest exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of *475 average caution in the belief that the person to be arrested has committed or is committing an offense. State v. Wilkens, 364 So.2d 934 (La.1978); State v. Johnson, 363 So.2d 684 (La.1978); State v. Marks, 337 So.2d 1177 (La.1976). Although mere suspicion cannot justify an arrest, State v. Thomas, 349 So.2d 270 (La.1977), the officer does not need sufficient proof to convict. State v. Randolph, 337 So.2d 498 (La.1976).
The officers in the instant case were justified in believing that defendant had committed an offense. The arresting officers had trustworthy information that Ricky died from extensive head injuries and these injuries were sustained in his home while the child was being cared for by the defendant. Defendant had changed her story as to how the injuries occurred several times and the police had been informed that Ricky's injuries were far too extensive to have occurred in any of the manners described by defendant. We find the defendant's arrest was supported by probable cause.
These assignments of error lack merit.
Assignment of Error No. 2
Defendant contends the trial court erred in allowing two x-rays of Ricky's skull to be admitted into evidence over objections by defense counsel. The x-rays were offered in connection with the testimony of Dr. Meade O'Boyle, a pediatrician who treated Ricky at St. Francis. Counsel objected to their admission on the grounds of improper identification, improper foundation, hearsay and they did not fit under the medical reports or business records exceptions to the hearsay rule. The same grounds are urged on appeal.
We do not consider whether the x-rays were properly admitted because their admission was not prejudicial to defendant. The head injuries revealed by the x-rays were merely cumulative. Dr. O'Boyle and Dr. Peira Grodman, the pathologist who performed the autopsy on Ricky, each testified about the extensive head injuries sustained by Ricky. They each had knowledge of these injuries acquired from their personal examination of Ricky without reference to the information revealed by the x-rays. The pathologist described in detail to the jury the fractures of the child's skull and the severe brain damage all of which she observed at the time she performed the autopsy.
This assignment of error lacks merit.
Assignment of Error No. 3
Defendant contends the trial court improperly allowed Dr. O'Boyle and Dr. Grodman to express their opinions, over defense counsel's objections, as to whether Ricky's injuries could have been caused by an aluminum window being pulled down on his head. Both replied yes.
As a general rule, a witness may only testify as to facts within his knowledge and cannot express any opinion he may have. La.R.S. 15:463. As an exception to this rule, an expert witness who through special training has knowledge of a matter not known to the public in general may express an opinion on that matter. La.R.S. 15:464. In stating his opinion, however, the expert may not invade the province of the jury by stating an opinion as to the ultimate issue of fact. See State v. Wheeler, 416 So.2d 78 (La.1982).
In essence, defendant argues that by stating that the injuries were sustained in a manner consistent with her confession, the doctors expressed their opinions on the ultimate issue of fact, i.e., defendant's guilt. We do not agree. The doctors merely stated their opinions as to how the injuries were inflicted. A physician testifying as an expert may properly give an opinion as to the probable manner in which a wound or other traumatic injury was inflicted where such testimony is based on facts within the expert's knowledge. State v. White, 298 So.2d 733 (La. 1974). See also State v. Williams, 216 La. 419, 43 So.2d 780 (1949); State v. Avery, 176 La. 264, 145 So. 535 (1933); State v. Voorhies, 115 La. 200, 38 So. 964 (1905).
Dr. O'Boyle and Dr. Grodman both examined Ricky's injuries and both had special *476 training in dealing with the type injuries he suffered. Their opinion testimony was properly admitted.
This assignment of error lacks merit.
Assignment of Error No. 5
Defendant contends the trial court erred in refusing to include three special charges in the jury instructions. The three special charges requested by defense counsel were the definitions of negligent homicide and criminal negligence and a statement to the effect that negligent homicide is not a responsive verdict to second degree murder.
The trial judge is required to give a requested charge which does not require qualification, limitation, or explanation and is not included in the general charges or another special charge, if it is wholly correct and pertinent to the case. La.C.Cr.P. 807; State v. Marse, 365 So.2d 1319 (La.1978); State v. Youngblood, 235 La. 1087, 106 So.2d 689 (1958); State v. Turner, 228 La. 202, 81 So.2d 861 (1955). The refusal to give a requested special charge does not warrant reversal of a defendant's conviction unless it prejudices substantial rights of the accused. La.C. Cr.P. 921; State v. Marse, supra.
Applying these principles to the instant case, we conclude that the refusal to give the requested special charges did not prejudice defendant's rights. The trial judge correctly instructed the jury that the only responsive verdicts to a charge of second degree murder are guilty, guilty of manslaughter, and not guilty. La.C.Cr.P. 814 A 3. The applicable parts of the second degree murder statute, La.R.S. 14:30.1,[2] and the manslaughter statute, La. R.S. 14:31,[3] were read to the jury and the trial court adequately explained that if any of the elements of either offense were not proved beyond a reasonable doubt, a verdict of not guilty had to be entered. The defense attorney, during his closing argument explained at depth that if the elements of the crimes were not proved, a verdict of not guilty had to be returned.
The defendant relies upon Marse, supra, wherein the defendant was charged with 1st degree murder and the court stated that where a jury could reasonably infer from the evidence that the defendant was guilty only of negligent homicide the court should have given a requested instruction on negligent homicide, even though negligent homicide was not a responsive verdict to the crime charged.[4] In Marse there was evidence from which the jury could have reasonably inferred negligent homicide.
The defendant here contends that because the defendant in her confession *477 stated that she pulled the window down upon the child's head to stop him from crying that a jury could infer that she was guilty only of negligent homicide. The defendant in her confession stated that she slammed the aluminum window down hard twice upon the baby's head. Her statement that she did this to make the baby stop crying cannot give rise to any inference from which a jury could find that she had no intent to "kill or to inflict great bodily harm." While the defendant's action would stop the baby from crying the conduct indicates that she actively desired the prescribed criminal consequences which were death or great bodily harm. This assignment of error has no merit.
Assignment of Error No. 6
Defendant contends her conviction was not supported by the evidence because the state failed to prove the necessary intent element.
Defendant was charged with second degree murder under the provisions of R.S. 14:30.1(1) which requires the state to prove she had the specific intent to kill or to inflict great bodily harm. Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Even though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction and the actions of the defendant. La.R.S. 15:445; State v. Boyer, 406 So.2d 143 (La.1981); State v. Fuller, 414 So.2d 306 (La.1982).
Defendant argues that even if her confession, which is the only direct evidence against her, was lawfully obtained, it does not support an inference that she had the specific intent to kill or inflict great bodily harm to Ricky. She points out that in her confession she stated that she slammed the window on Ricky's head to get him to stop crying and that she tried to rock him to sleep afterwards. She claims both actions are inconsistent with a finding she intended to kill or inflict harm on Ricky.
We do not agree. Defendant's actions in twice slamming a window down hard on a mere infant's head supports an inference she intended to kill or do great bodily harm. This assignment of error has no merit.
Assignments of Error Nos. 7 and 8
In these assignments of error defendant complains of the trial court's refusal to grant defense motions of post verdict judgment of acquittal and new trial. Both motions are based on grounds covered in defendant's other assignments of error. We previously addressed and rejected each of defendant's contentions and will not reconsider them now.
These assignments of error lack merit.
Defendant asks this court to search the record for any other error patent on the face. We have searched the record and find no such errors.
For the foregoing reasons defendant's conviction and sentence are AFFIRMED.
NOTES
[1] Ricky lived in Bastrop with defendant. His injuries occurred there and he was first taken to a doctor in Bastrop then transferred to E.A. Conway Medical Center in Monroe before being transferred to St. Francis.
[2] The applicable parts of R.S. 14:30.1 provide: Second degree murder is the killing of a human being:

(1) When the offender has a specific intent to kill or to inflict great bodily harm; ...
[3] The applicable parts of R.S. 14:31 provide:

Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Articles 30 or 30.1, or of any intentional misdemeanor directly affecting the person; ...
[4] R.S. 14:12:

Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
R.S. 14:32:
Negligent homicide is the killing of a human being by criminal negligence.
The violation of a statute or ordinance shall be considered only as presumptive evidence of such negligence.
Whoever commits the crime of negligent homicide shall be imprisoned with or without hard labor for not more than five years, fined not more than five thousand dollars, or both.